IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| DARRAN FARMER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. 22-cv-02974 |
| VS. | ) | |
| | ) | |
| FILMTEC CORPORATION, and DUPONT | ) | |
| DE NEMOURS, INC. | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## COMPLAINT

PLAINTFF, Darran Farmer, by and through his attorneys, MESHBESHER & SPENCE, LTD AND CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANTS FILMTEC CORPORATION AND DuPONT DE NEMOURS, INC.

## JURY DEMAND

COMES NOW PLAINTIFF, Darran Farmer, and hereby makes his demand for trial by jury.

## JURISDICTION

1.  At all times relevant to this action Plaintiff was a resident of the State of Minnesota, County of Anoka.

2.  Defendant Filmtec Corporation ("FilmTec") is a corporation, which has a continuous and systematic place of business in Edina, Minnesota.

3.  Defendant DuPont de Nemours, Inc. ("DuPont") is an affiliate corporation of Defendant Filmtec, which does business in the State of Minnesota, and has its principal place of business in Wilimington, Delaware.

4.   All relevant actions giving rise to this complaint took place in Hennepin County, Minnesota.

5.   This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

6.   Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

7.   Venue is proper in the District of Minnesota pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

8.   Mr. Farmer is an African-American male was hired by Defendant FilmTec on or about March 28, 2011 as a Manufacturing Operator in the Aqua 40 department at the Edina, Minnesota site.

9.   The Edina site is home to the Water and Process Solutions business, as FilmTec is a global leader in sustainable separation and purification technology.

10.  Plaintiff was, by all accounts, good at his job, and Defendant considered him to be more than competent, as he had worked without incident for nearly 10 years.

11.  Defendant FilmTec now considers him to be a Senior Manufacturing Operator, due to his many years of experience.

12.  Plaintiff had a disability within the meaning of state and federal law because he had been diagnosed with diabetes which required him to undergo surgery, for which he requested time-off.

13.   On or about April 16, 2020, Plaintiff lodged an anonymous called lodged a complaint (which he later admitted to Defendant was done by him) on Defendants' hotline, alleging that he was: 1) written up for failing to advise supervision that he was leaving the site due to illness; 2) passed over for promotions; 3) treated differently by supervisors for going to the medical department; and 4) ignored by management.

14.   As a result, Defendant claims that it substantiated claims that there was a lack of leadership on the fourth shift, and so a supervisor moved full-time to the shift.

15.   Defendant further claimed that it could not substantiate the other claims.

16.   Defendant indicates that the status of the case was relayed to the third-party company which maintains Defendants' hotline, on May 18, 2020, during which call the anonymous caller provided additional allegations: 1) that racist things were posted on the information board; 2) supervisors say the "n" word, comment that "those people are lazy," and makc "chicken and watermelon jokes;" and 3) supervisors make comments about Ramadan and make it difficult for employees to leave their work stations to pray.

17.   Defendant claimed that it could not substantiate any of the allegations except the first one, which an investigation revealed that the words "Chinese Origin Virus Infectious Disease" had been written under each letter of the word "COVID" on the information board.

18.   Defendant states that it was erased several hours later, though nothing else was done.

19.   Thereafter, Plaintiff required leave to handle his disability

20.   On or about September 11, 2020, Defendant's agent, Rita Kaluza, acknowledged that Plaintiff had been improperly disciplined for allegedly leaving the floor of the workplace, whereupon an investigation revealed that he had provided notice and the discipline was removed.

21.   Plaintiff was to return on leave as of November 8, 2020, however, no information was provided regarding his return.

22.   At the end of 2020 into early 2021, Plaintiff continued to have issues with his leave requests, including FMLA leave, and was not clear whether his leave had been approved or whether it had not; Defendant did nothing to try to make this situation clear.

23.   The continuous issues caused Plaintiff to file his first charge with the EEOC, the discrimination and caused him to be retaliated against in the form of more interference with his leave requests.

24.   As Plaintiff stated in his response to Defendant's position statement to the EEOC:

   a.   Plaintiff informed Defendant's agent nurse that he needed medical care, and said nurse informed management;
   b.   While Plaintiff was out on leave, Defendant made him jump through hoops to be able to return to work; while he was cleared by his own providers, Defendant made him seek an "independent medical review" of his disability to see if he would be permitted to return to work.
   c.   During his first meeting, the doctor hired by Defendant found that Plaintiff was unable to return to work – despite not ordering nor performing any tests nor reviewing any of Plaintiff's records.
   d.   During his second "independent medical review," Defendant's doctor did perform a "strength" test, around Christmas of 2020, which he easily passed and both Plaintiff and Defendant were notified of the same within the week.

25.   Following this exchange with the EEOC, it became apparent that Defendant would try to force Plaintiff out of work.

26.   Plaintiff heard nothing from Defendant following his call in December of 2020.

27.   Approximately one week prior to February 1, 2021, Plaintiff received communication from Rita Kaluza, Defendant's human resources manager, in which he was advised that he would see the nurse, attend a meeting, review paperwork, and then return to the floor to work.

28. On February 1, 2021, Plaintiff came to Defendant's premises, but his badge did not work. He then met with the nurse and attended a meeting with Ms. Kaluza, and Maurice Roberts, the shift supervisor.

29. At the meeting, Plaintiff was given write-ups alleging that he had committed infractions in October 2020.   Plaintiff asked for time to review and respond.

30. Ms. Kaluza stated that it did not matter if Plaintiff signed the documents, because they would be placed in his employment file and that that would put him on a "final warning," meaning any further infractions would result in termination.

31. Ms. Kaluza demanded that Plaintiff provide her with his badge, which he gave to her.

32. Nothing else was said, and Plaintiff left the premises.

33. A few days later, following the meeting, a FedEx carrier showed up at Plaintiff's door and provided him with his termination packet.

34. Plaintiff was not aware of anyone else who suffered from the treatment that he did.

35. Plaintiff was advised in the termination letter that was in the packet that he was being terminated due to insubordination.

36. Plaintiff then revised his charge of discrimination with the EEOC to include his termination.

37. The EEOC issued a Notice of Plaintiff's Right to Sue, dated August 30, 2022, which he received on approximately September 10, 2022.

38. Plaintiff requests relief as described in the Prayer for Relief below.


## COUNT I
### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")

39. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

5

40. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

41. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

42. Plaintiff has been diagnosed with diabetes, and as a result, Plaintiff has a disability within the meaning of the ADA.

43. Plaintiff's disability under the ADA is qualified, meaning that with reasonable accommodation, he can perform the essential functions and duties of his job.

44. Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

45. As outlined throughout this Complaint, Plaintiff was discriminated against on the basis of his disability in regard to advancement, discharge, compensation, and other terms, conditions, and privileges of employment.

46. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

47. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

48. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

49. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

50. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. 363A.01, et seq. ("MHRA")

51. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

52. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the MHRA.

53. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

54. Plaintiff has a disability within the meaning of the MHRA.

55. Plaintiff's disability is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

56. The MHRA makes it illegal to discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability, that is unrelated to the person's ability to perform their job.

57. As laid out in the statement of facts, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his disability when, including, but not limited to, the time when he terminated from his position for missing too much work treating his disability.

58. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

59. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor discharged.

60. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

61. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

62. Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT III</u>
## INTERFERENCE AND RETALIATION IN VIOLATION OF THE ADA

63. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

64. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA.

65. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

66. Plaintiff has been diagnosed with diabetes, and as a result, Plaintiff has a disability within the meaning of the ADA.

67. Plaintiff's disability under the ADA is qualified, meaning that with reasonable accommodation, he can perform the essential functions and duties of his job.

68. Section 12203(a) of the ADA makes it illegal for anyone to, "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter"

8

69.  Plaintiff opposed the retaliation and push back he received for attempting to take reasonable time off because of his disability by, among other things, continuing to treat and push back against management when his schedule was reduced because of it.

70.  Moreover, Section 12203(b) of the ADA makes it, "…unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed…"

71.  As outlined in the statement of facts, Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when, including, but not limited to he was terminated from his employment for taking time off treating his disability.

72.  Further, Defendant retaliated against Plaintiff for filing a charge of discrimination on the basis of disability with the EEOC, which resulted in him not being brought back to work and culminated in his termination.

73.  Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

74.  But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

75.  As a direct and direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

76.  As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

77.  Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## INTERFERENCE AND RETALIATION IN VIOLATION OF THE MHRA

78.   Plaintiff incorporates by reference the allegations set forth above as if alleged herein.

79.   At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the MHRA.

80.   A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

81.   Plaintiff has a disability within the meaning of the MHRA.

82.   Plaintiff's disability is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

83.   The MHRA makes it illegal to retaliate or discriminate against a person because the person has opposed a violation of the Act.

84.   Plaintiff opposed the retaliation and push back he received for attempting to take reasonable time off because of his disability by, among other things, continuing to treat and push back against management when his schedule was reduced because of it.

85.   Moreover, under the MHRA, it is illegal to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected under the Act.

86.   As outlined in the statement of facts, Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when, including, but not limited to he was terminated from his employment for taking time off treating his disability.

87.   Further, Defendant retaliated against Plaintiff for filing a charge of discrimination on the basis of disability with the EEOC, which resulted in him not being brought back to work and culminated in his termination.

88. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

89. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

90. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

91. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

92. Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT V**</u>
**INTERFERENCE AND RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA")**

93. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

94. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the FMLA.

95. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

96. Plaintiff has been diagnosed with diabetes, and as a result, Plaintiff has a disability for which he was or should have been permitted to take leave under FMLA.

97. The FMLA makes it illegal for anyone to interfere with a plaintiff's rights under the FMLA, which includes making it difficult for said individual to take leave and/or retaliating against a person who takes or attempts to take leave pursuant to the FMLA.

98.  Plaintiff opposed the retaliation and push back he received for attempting to take leave because of his medical issues by, among other things, continuing to treat his condition and push back against management when he was not allowed to return to work because of it.

99.  Further, as stated above, Defendant made Plaintiff "jump through hoops" to attempt to return to work after taking leave, and further retaliated against him when he filed a charge of discrimination with the EEOC regarding his disability.

100.  Moreover, the FMLA makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised his rights under the FMLA.

101.  As outlined in the statement of facts, Defendant interfered with Plaintiff's ability to exercise rights under the FMLA and the enjoyment of those rights when, including, but not limited to he was terminated from his employment for taking time off to treat his disability.

102.  Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

103.  But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

104.  As a direct and direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

105.  As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

106.  Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

107. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

108. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. §§§ 12111 (4) 12111(2); 12111(5).

109. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

110. Plaintiff has a disability within the meaning of the ADA, 42 U.S.C. § 12102.

111. Plaintiff's disability under the ADA is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

112. Plaintiff's requested accommodation included allowing Plaintiff reasonable time off to treat his disability after a seizure episode.

113. The ADA, 42 U.S.C. §12112, prohibits an employer from discriminating against an employee on the basis of disability.

114. Defendant violated the ADA, 42 U.S.C. §12112, when it engaged in the following, including but not limited to terminating Plaintiff for attempting to reasonably treat his disability.

115. Defendant's said unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

116. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE MHRA

117. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

118. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the MHRA.

119. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

120. Plaintiff has a disability within the meaning of the MHRA.

121. Plaintiff's disability under the MHRA is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

122. Plaintiff's requested accommodation included allowing Plaintiff reasonable time off to treat his disability after a seizure episode.

123. The MHRA prohibits an employer from discriminating against an employee on the basis of disability.

124. Defendant violated the MHRA when it engaged in the following, , including but not limited to terminating Plaintiff for his attempts to reasonably treat his disability.

125. Defendant's said unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

126. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")

127. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

128. At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of Title VII.

129. Plaintiff is an African-American male and is thus in a protected class.

14

130. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

131. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, where the harassment is due to Plaintiff's membership in a protected class.

132. Defendant intentionally created an environment, more fully laid out in the statement of facts and herein the complaint, in which Plaintiff suffered racial harassment at work, including pervasive us of racial epithets by Plaintiff's supervisor and racially-charged comments by other employees and agents of Defendant, that was ignored and not remedied by Defendant, despite Plaintiff's complaints regarding the same.

133. This type of conduct was intended to, and did interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

134. Defendant's hostile work environment was culminated intentionally, with malice, or with reckless indifference to Plaintiff's rights.

135. But for Defendant's illegal discrimination and retaliation, and the environment that that discrimination and retaliation created, Plaintiff would not have been damaged nor eventually discharged.

136. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

137. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

138. Plaintiff requests relief as described in the Prayer for Relief below.

<u>COUNT IX</u>
**HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE MHRA**

139. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

140. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the MHRA.

141. Plaintiff is an African-American male and is thus in a protected class.

142. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

143. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, where the harassment is due to Plaintiff's membership in a protected class.

144. Defendant intentionally created an environment, more fully laid out in the statement of facts and herein the complaint, in which Plaintiff suffered racial harassment at work, including pervasive us of racial epithets by Plaintiff's supervisor and racially-charged comments by other employees and agents of Defendant, that was ignored and not remedied by Defendant, despite Plaintiff's complaints regarding the same.

145. This type of conduct was intended to, and did interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

146. Defendant's hostile work environment was culminated intentionally, with malice, or with reckless indifference to Plaintiff's rights.

147. But for Defendant's illegal discrimination and retaliation, and the environment that that discrimination and retaliation created, Plaintiff would not have been damaged nor eventually discharged.

148. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

149. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

150. Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT X</u>
## RETALIATION IN VIOLATION OF TITLE VII

151. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

152. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

153. At all material times, Plaintiff was an employee covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

154. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

155. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

156. Plaintiff engaged in protected activity when he took the following actions including but not limited to complaining of racial harassment and discrimination at work.

157. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior because he was engaging in this protected activity with his supervisors to whom he complained about the conduct.

158. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against culminating in Plaintiff's termination.

159. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

160. Plaintiff notified Defendants and its agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

161. As a proximate result of the Defendants' discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

162. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

163. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XI
## RETALIATION IN VIOLATION OF THE MHRA

164. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

165. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the MHRA.

166. Defendant's conduct, as alleged herein, violated the MHRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

167. A respondeat superior relationship existed because Defendant's managers had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

168. Plaintiff engaged in protected activity when he took the following actions including but not limited to complaining of racial harassment and discrimination at work.

169. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior because he was engaging in this protected activity with his supervisors.

170. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against culminating in Plaintiff's termination.

171. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

172. Plaintiff notified Defendant's agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

173. As a proximate result of the Defendants' discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

174. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

175. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XII
## WRONGFUL DISCHARGE IN VIOLATION OF MINNESOTA PUBLIC POLICY

176. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

177. It is the longstanding public policy of the State of Minnesota that there are exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge, where an employee can identify a clear mandate of public policy that the employer violated when it discharged the employee.

178. Here, Plaintiff was discharged because he took leave to attend to his health condition and complained of racial harassment and discrimination at work, as conferred by well-established legislative enactments, specifically including, but not limited to, the FMLA, the ADA, the MHRA, and the public health code, and nothing was done.

179. Moreover, the FMLA, ADA, and MHRA have explicit language that prohibits the discharge, discipline, or other adverse treatment of Plaintiff, however, Defendant retaliated against Plaintiff for attempting to protect his rights laid out in these statutes.

180. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

181. Plaintiff requests relief as described in the Prayer for Relief below.

As such, Mr. Campbell is entitled to relief as set forth below

## RELIEF REQUESTED

PLAINTIFF, DARRAN FARMER, RESPECTFULLY REQUESTS that this Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount above $75,000 to which Plaintiff is entitled,

2. Exemplary and any other damages, as applicable, in whatever amount above $75,000 to which Plaintiff is entitled,

3. An award of lost wages and the value of fringe benefits, past and future,

4. An award of interest, costs, and reasonable attorney fees, and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  November 28, 2022

Respectfully Submitted,

MESHBESHER & SPENCE

/s/ Ashleigh Raso
Ashleigh Raso (MN 0393353)
Meshbesher & Spence, Ltd.
1616 Park Avenue
Minneapolis, MN 55404
araso@meshbesher.com

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D Aikens (*pro hac vice pending*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com

*Attorneys for Plaintiff*